LAMB (FIELDS v.). See Case No. 4,775.

## Case No. 8,016.

### LAMB v. GILLETT.

[6 McLean, 365.] [1]

Circuit Court, S. D. Ohio. April Term, 1855.

TAX TITLE — DEED PRIMA FACIE GOOD — PAROL PROOF OF MATTERS NOT OF RECORD—PRESUMPTION IN FAVOR OF REGULARITY.

1. A claim of title under a tax sale, can only be sustained by showing a substantial compliance with the statute.

2. Under the tax law of Ohio, of the 14th of March, 1831 [Laws Ohio 1829–31, p. 288], which declares that the deed of a county auditor for land sold for taxes shall vest a good and valid title in the grantee, both in law and equity, and shall be received in all courts as prima facie evidence of a good and valid title, the deed is admissible in evidence, without proof of the preliminary proceedings.

3. The deed being received in evidence, the onus of impugning its validity, by showing that the prior proceedings were irregular or illegal, rests on the other party.

4. The recitals in the county auditor's deed, being made under the sanction of his official oath, are presumed to be true till the contrary is proved.

5. In proof of the proceedings, preliminary to the sale, it is only necessary to show by the county auditor's record, such facts as the statute expressly requires to be of record; and parol proof is admissible of any facts, not required to be recorded.

6. The doctrine of presumption in favor of the acts of sworn public officers, applies in cases involving the validity of tax proceedings.

At law.

Swayne & Baker, for plaintiffs.
Mason & White, for defendant.

LEAVITT, District Judge. This is an action of ejectment for a tract of land in Clark county. By agreement of counsel the case was submitted and argued at the last term, without the intervention of a jury, and with the understanding that the evidence offered was to be received, subject to all legal exceptions to its competency. The lessors of the plaintiffs, as proof of title, have introduced a patent from the United States, dated the 17th of June, 1817, granting the tract in controversy to Joseph Lamb's heirs; and, in connection with this, they have proved that they are the legal heirs of the said Lamb. The defendant [James H. Gillett] sets up a title under a sale of the land for taxes. He has offered in evidence: 1st. A deed from J. S. Halsey, county auditor of Clark county, dated 28th of March, 1835, to Landaff W. Andrews, which, after reciting fully the prior proceedings, shows a sale of the tract on the last Monday of December, 1832, to James L. Torbert, for the taxes of 1831 and 1832, and an assignment of the certificate of purchase by Torbert to said Andrews. 2d. A deed from Andrews and wife to Joseph Wheldon, dated the 17th of March, 1837. 3d. A deed from Wheldon and wife to the defendant, dated the 16th

[1] [Reported by Hon. John McLean, Circuit Justice.]

of May, 1839. The defendant also offered in evidence, an abstract from the books of the county auditor's office, from which it appears that the land was entered upon the duplicates in the name of Joseph Lamb's heirs, for the years 1831 and 1832; and having been returned delinquent for those years was offered for sale, and sold by the county treasurer to the said James L. Torbert. In connection with these abstracts, the duplicates from the offices of the county treasurer, the county auditor, and the auditor of the state for the years above named, as also an authenticated copy of the delinquent lists from the office of the state auditor, were exhibited. The defendant also introduced James S. Halsey, the county auditor of Clark county during the progress of these proceedings, as a witness, who testified that the duplicates exhibited as those delivered by him to the county treasurer for the years 1831 and 1832, were the same that were made out and delivered by the witness to the treasurer, with the proper year marked on the back of each. The lessor of the plaintiffs also offered certain abstracts from the books of the county auditor's office, with copies of the certificates appearing on the duplicates in that office for the years 1831 and 1832, to prove, from the dates of those certificates, that the duplicates had not been made out and delivered to the treasurer within the time prescribed by the statute, and that in other respects the law had not been complied with. In explanation of the dates of the certificates referred to, the defendant examined Mr. Halsey, who stated that the dates affixed to them had no reference to the time when the duplicates for the use of the county treasurer were made out, or the date of their delivery to him by the witness as county auditor. And the witness also stated that he had no reason to doubt, and did believe, that the duplicates referred to were made out and placed in the hands of the treasurer in proper time.

This statement, it is believed, presents substantially, the evidence offered in this case, though probably not in the precise order of its introduction by the parties. It shows, however, with sufficient distinctness the matters in controversy requiring the consideration of the court. There is no disagreement between the counsel as to the correctness of the principle that, to sustain a tax title, the party claiming under it must show a substantial compliance with the requirements of the statute under which the proceedings have taken place. This has been too well settled, as applicable to the acts of all public officers deriving their authority from the statutory enactments, to be now questioned. In general, the courts of Ohio have applied it with great stringency to proceedings constituting the basis of tax titles. In some of the more recent cases, however, which will be particularly noticed hereafter, the supreme court of Ohio have relaxed from the strictness and severity of their earlier decisions. But the right of a party resisting the validity of a tax title, to

impugn it by showing defects and irregularities in the preliminary proceedings, has been uniformly recognized by that court. And in this court also, in the few cases which have been before it, involving tax titles, the same principle has been sanctioned. Yet it must be admitted that in this class of cases, questions of no small difficulty sometimes arise as to what constitutes a substantial compliance with the law, and under what circumstances parol proof is admissible to show what has been done, and to what extent the doctrine of presumption in favor of the acts of public officers, may be properly applied to sustain those acts.

Before we consider the question whether the defendant has proved that in the proceedings under which he claims title, there has been a substantial compliance with the statute, it may be proper to ascertain under what circumstances the deed of the county auditor is to be received and treated by the court as prima facie evidence of title in the grantee. This point has been discussed by counsel, and several authorities have been cited applicable to it. On the one hand, it is insisted that the deed, including all its recitals, is to be received and accredited as prima facie evidence of title, without other proof; and that, being so received, the onus of showing defects and irregularities in the prior proceedings, affecting its validity, falls on the party who resists the title set up under it: or, if the deed is not thus received, and this effect given to it without extrinsic proof, it is necessary only to show preliminarily, that the land sold for taxes and conveyed by the deed, had been duly entered on the duplicate for taxation, and had been returned delinquent and sold for the taxes. On the other hand, it is urged that the auditor's deed is not per se, to be received as prima facie evidence, and only when it is sustained by proof of a strict compliance with all the provisions of the statute.

This point, in the precise form in which it has been discussed by counsel, does not necessarily arise in this case. The defendant, without pressing the question of the admissibility of the deed, unsustained by other proof, has introduced the record of the proceedings on which it is based; and that record constitutes an item of evidence in the case. In this view, the court might properly restrict their enquiry to the question of the sufficiency of the auditor's deed, sustained as it is by the extrinsic proof offered by the defendant. We will, however, briefly consider the provision of the statute under which this deed was made, and the authorities referred to by counsel bearing on the question of its construction. And here it may be remarked, that on this question, in accordance with a principle long sanctioned by the supreme court of the United States, we shall be guided in our conclusions by the construction given to the statute by the supreme court of Ohio, so far as it is fixed and ascertainable.

The statute under which the land in dispute

was sold for taxes, was the act prescribing the duties of county auditors, passed March 14, 1831. 3 Chase's St. 1807. This statute, among other things, requires that if land returned delinquent for the non-payment of taxes and sold, is not redeemed by the owner within two years from the date of the sale, the county auditor, after the expiration of that time, shall make out and deliver a deed therefor to the purchaser or his assignee. And the 39th section declares the effect of the deed in these words:—"The deed so made by the auditor, shall vest in the grantee, his or her heirs or assigns, a good and valid title, both in law and equity, and shall be received in all courts as prima facie evidence of a good and valid title in such grantee, his or her heirs or assigns."

Some cases from the Ohio Reports have been cited by counsel, on the point under consideration, which originated under statutes differing in their general provisions, and especially in the language used declaring the effect of a deed executed for land sold for taxes, from that under which the proceedings in this case were had. It will not be necessary to notice these with much particularity. In the case of Holt v. Hemphill, 3 Ohio, 232, it is not stated in the report under what statute the tax proceedings took place, nor what was the peculiar language of the law in regard to the effect of the deed for land sold for taxes. The court held that the deed was no evidence of title, unless accompanied with proof that the proceedings prior to the sale had been conducted according to the requirement of the statute. And, in the case of Carlisle v. Longworth, 5 Ohio, 368, which involved the validity of a tax deed under the act of February 1, 1825 [23 Laws Ohio, p. 89], the same principle was settled. The 9th section of the act provided, that "the deed made by the county auditor, as herein before specified, shall be received as prima racie evidence of title, and shall convey to the purchaser or purchasers, a good title in law and equity," &c. The court say: "Before the deed made by the county auditor can be received as evidence, it must be shown that he had authority to make it. This is done by showing that the land had been advertised and sold for taxes." And again: "In connection with this preliminary evidence, the deed will be received, and the legislature has declared its effect." In the case of Thompson v. Gotham, 9 Ohio, 171, the court say: "In order to sustain a title under a sale for taxes, it is not sufficient to produce the collector's deed. There must be evidence to show that the tax has been levied, that the steps, required by law to authorize the sale, have been taken, and that the person making the deed had authority to make it." The tax in the case here cited, was not assessed under a general tax law, but by a corporation, having power under its charter to levy taxes for certain purposes.

The next case presenting the question whether the auditor's deed, under a tax sale, could be received in evidence without extrinsic proof to support it, was that of Turney v. Yeoman, 14 Ohio, 207. In this case there had been a forfeiture of the land to the state, for the nonpayment of taxes; and the land was sold under the act of the 14th March, 1831, providing for the sale of lands forfeited. 3 Chase's St. 1817. By the 6th section of the act, the county auditor was required to execute a deed to the purchaser, "which deed," it is declared, "shall be prima facie evidence of title in the purchaser or purchasers." The deed of the county auditor was objected to, as inadmissible without proof of the preliminary proceedings. In the commencement of their opinion, the court say: "The objection to the introduction of this deed presents a new and interesting question," from which it is to be inferred that there had been no previous decision of the court on that point, that was regarded as authoritative. After a critical examination of the statute, the conclusion to which the court arrives, is, that effect must be given to the clear and explicit provision of the statute declaring that the auditor's deed shall be prima facie evidence of title in the grantee. The court say, "it makes the deed, while unimpeached, evidence in and of itself, without any other proof." And adverting to the decision in the case of Carlisle v. Longworth, the court arrived at the conclusion that it rested on the peculiar phraseology of the 9th section of the act of 1825, which declared the auditor's deed evidence, only after proof that the preliminary requisites of the statute had been complied with.

This case would seem to be decisive on the question now under consideration. It is true the tax title set up in that case was based on a sale of land forfeited to the state for nonpayment of taxes, pursuant to the act of the 14th of March, 1831, to provide for the sale of lands thus forfeited. But in principle, no distinction is perceived between a sale under that statute and the statute authorizing the sale of lands delinquent for the nonpayment of taxes. In either, there must be a substantial compliance with the requirements of the statute. It is noticeable, however, that there is some difference in the phraseology of these statutes, in reference to the effect of the county auditor's deed. In the law respecting sales for delinquent taxes, the legislature have declared that the deed made by the auditor shall "vest a good and valid title" in the grantee, both "in law and equity," and shall be received in all courts as prima facie evidence of a good and valid title, whereas, in the act relating to forfeited lands, it is simply declared that the auditor's deed "shall be prima facie evidence of title in the purchaser or purchasers." It seems clear, that if under the latter statute the deed is admissible in evidence, unsustained by proof of the preliminary proceedings, much more is it so under the act relating to sales of delinquent lands, in which the legislature, ex industria, have

declared that the deed shall vest in the purchaser a good title, both in law and equity, and in mandatory terms have required all courts to receive such deed as prima facie evidence of title.

The ruling of the supreme court of Ohio, in the case of Turney v. Yeoman, just referred to, has not been changed in any case which has since been before that court, but has, as we think, been affirmed in two cases which will now be noticed. In Douglas v. Dangerfield, 14 Ohio, 522, a tax title was in question, originating under the statute of 1831, the same under which the proceedings in the case before the court took place; but the question whether the auditor's deed could be received, per se, as prima facie evidence of title, was not distinctly presented, for the reason that the party claiming under the deed had introduced evidence of the prior proceedings, in support of the deed. But in their opinion, the court make the pregnant remark, that "it would not, perhaps, be going too far to say that the production of the auditor's deed alone was sufficient to put the defendants on their defence." It is obvious, we think, that if there had been no extrinsic evidence offered, the deed would have been received, in accordance with the decision in the case of Turney v. Yeoman. In a subsequent case between the same parties (16 Ohio, 24) the judge who gave the opinion of the court, refers to the former case, and speaks of the point decided as "the late decision of this court, which gives effect to tax deeds without other proof to support them."

In view of these cases, we think there can be no doubt that the supreme court of Ohio intended to give a construction to the provision of the statute declaratory of the effect of an auditor's deed, by which such deed is receivable in evidence, without extrinsic proof, as prima facie evidence of title; and that its reception throws upon the party resisting the tax title the burden of impeaching it by proof that the prior proceedings were not in accordance with the statute. And we accord fully with that court in this conclusion as we do not see, from the plain and explicit language of the statute, that any other is admissible. In accordance with this view, the proper order of proof would be, that the evidence impugning the proceedings on which the auditor's deed was based, should follow the introduction of the deed. But, as before stated, as we understand the course pursued by counsel in the trial, the defendant, in connection with the deed, offered transcripts from the books of the auditor, with other proof to sustain it. In this posture of the case, it will perhaps be more convenient and appropriate to advert to this evidence before considering that offered by the plaintiffs in support of their exceptions to the proceedings prior to the tax sale. As before noticed, the defendant has offered transcripts from the auditor's books showing the preliminary proceedings, accompanied with the duplicates for the years 1831 and 1832, and an authenticated copy of the list of lands returned as delinquent for the nonpayment of the taxes for those years. From an inspection of these papers, it satisfactorily appears that the land in controversy was duly entered on the duplicate of 1831, for Clark county, as subject to taxation, in the name of Joseph Lamb's heirs, and was returned by the county treasurer as delinquent for that year. It was again entered in the name of the same persons on the duplicate of 1832, charged with the tax of that and the preceding year, with the interest and penalty added, and again returned as delinquent. It also appears from the record of sales of lands sold for taxes in Clark county, that a list of lands delinquent for the years named, embracing the tract in question, in the name of Lamb's heirs, was published for four weeks successively after the 1st of October, and prior to the 1st of December, 1832, in the Western Pioneer, a newspaper printed at Springfield, with a notice that the several tracts named in said list would be offered at public sale at the court house, on the last Monday of December, in said year; and that the tracts, pursuant to the notice, were offered for sale by the treasurer; and that the tract in the name of Lamb's heirs was returned as sold to the said Torbert.

If we are right in the conclusion before stated, that by the express provision of the statute, the auditor's deed is to be received as prima facie evidence of title, it was not incumbent on the defendant to offer any proof to sustain it, until impeached by the other party. We suppose, as a necessary result, all the recitals of the deed are to be received as true till the contrary appears. Such was clearly the intention of the statute, in the provision declaring the effect of the auditor's deed. The deed is made by that officer under all the sanctions of his official character, and, upon the soundest principles of law, is to be viewed with every presumption in its favor, until it is invalidated by proof. In its recital of the preliminary proceedings, it is to be regarded as a solemn certificate by the officer that they transpired precisely as they are set forth. Having carefully examined the recitals of this deed, and compared the facts stated with the requirements of the statute, we find that all these requiremnts have been fully and accurately complied with. Everything necessary to be done, is certified to have been done in the precise manner pointed out by law.

Viewing the auditor's deed in this light, the enquiry is presented, whether it is efficiently impeached by the proofs offered by the plaintiffs. Before noticing the exceptions insisted upon as invalidating the deed, it may be proper to remark, that they can only be sustained by positive proof that the facts relied on as the basis of the tax title,

and which, by the statute, give it legal vitality, do not exist. It is the undoubted right of the party impugning such title, to show that it has no foundation in fact or law on which to rest. As to him, the county auditor cannot be regarded as his agent, and he is not concluded by his acts, and may even contradict facts appearing of record on the auditor's books. He may defeat the tax title by showing that the land taxed was by law exempt from taxation, or that it was not entered on the duplicate, or that the taxes had been actually paid, or that the land was never returned delinquent, and was not in fact sold for taxes. All this he may show by substantive proof; but he cannot rest on mere presumptions to rebut and negative the recitals of the auditor's deed, or the facts exhibited by the records and transcripts from his office.

The exceptions to these proceedings, as stated and insisted on by the plaintiffs' counsel, refer: 1st. To alleged defects and irregularities connected with the duplicates; as that it does not appear on the duplicates exhibited, for what years they were made, or that they were the duplicates for Clark county, or were even in the county auditor's office, or that they were made out by the 15th of August, and delivered in due time to the county treasurer. 2d. To alleged defects and irregularities connected with the delinquent list, and the sale of the land; as that it does not appear that the treasurer made oath to the delinquent list for 1831, or that he gave public notice of the sale immediately after the 15th of August. This statement embodies, it is believed, the exceptions relied on by the plaintiffs' counsel, in resisting the title asserted under the tax deed. These exceptions, it will be noticed, are founded upon, and suppose facts, which are in opposition to the recitals of the auditor's deed. As before stated, that deed recites, with great specialty and minuteness, all the proceedings preliminary to the sale, as having been conducted in exact accordance with the requirements of the statute. The objections urged, are not based on any positive proof of any act of official neglect or misconduct on the part of those charged with the enforcement of the law, but on inferences of such neglect or misconduct, deduced from certain documents offered in evidence by the plaintiffs. In accordance with the views before expressed, as to the legal effect and operation intended to be given to the auditor's deed under the statute, we think that nothing has been shown to impeach its validity, and that it rests in the grantee a good title.

But, if this conclusion is erroneous, and it should be conceded that the plaintiff has so far impeached the proceedings on which the tax title rests, as to make it incumbent on the defendant to sustain the recitals of the auditor's deed, no reason is perceived why that is not satisfactorily done by the evidence before the court, which has been before noticed. This evidence consists in abstracts and transcripts from the books of the county auditor's office, explained as to some facts, by the parol testimony of the person who held the office of county auditor, while these proceedings were in progress. This evidence corroborates and sustains the recitals in the deed. It is indeed insisted, that parol evidence is inadmissible to establish any fact, connected with these tax proceedings; but, upon the authority of cases, to which we shall hereafter refer, we think, this objection is not sustainable. We suppose the principle applicable to this point is, that those acts which the statute expressly requires to be of record, or in writing, must be so proved; but as to matters where this is not required, parol or secondary proof is competent. The application of this principle, in connection with the verbal testimony of Mr. Halsey given on the trial, disposes of several of the exceptions to these proceedings, if otherwise well taken. He testifies that the duplicates for Clark county for the years 1831 and 1832, made out for the various purposes designated by the statute, and offered in evidence, were made by himself, and identifies those exhibited to him as the duplicates for those years. He also proves that the copy required by the 23rd section of the statute, to be made out and delivered to the county treasurer, was made out and delivered by him, with the proper year inscribed, and as the witness believes "on or before the 15th day of August" as directed by the statute. As the law does not require the auditor to make any record, or memorandum in writing of the making and delivery of this duplicate, there can be doubt, that it is competent to prove it by parol.

The counsel for the plaintiffs has referred to the case of Kellogg v. McLaughlin, 8 Ohio, 114, as an authority against the admissibility of parol evidence, in support of a tax proceeding. That case involved the validity of a tax sale, under the act of March, 1831. It seems that written evidence of the publication of the notice of sale, taken from the books of the county auditor, had been offered in evidence, and rejected in the court below, on the ground that it did not appear that the publication had been made as required by the statute. The 30th section provides, that prior to the sale, the delinquent list and notice of sale, shall be published for four successive weeks "between the first day of October and the first day of December." The record showed that the publication was for four successive weeks between the first Monday of October and the first Monday of December. The supreme court held that the evidence was properly rejected, as the record did not show that the last of the publications was before the first day of December. This case settles the principle, that as the statute made it the express duty of the auditor to record the delinquent list

with the notice of sale annexed, it must be proved by the record that the statute had been complied with, and that parol evidence was not admissible to show the publication was in fact made as prescribed by the statute. Such proof would have contradicted the record, and was therefore clearly incompetent. But, in that case, it is not held or intimated that parol proof may not be received to establish any fact, which the law does not require to be recorded or in writing.

In the case of Thevinin v. Slocum, 16 Ohio, 519, the distinction adverted to, is distinctly recognized. It was a tax title case, under the act of 1822 [20 Laws Ohio, p. 23]. Parol proof, in connection with documentary evidence was offered, and held to be admissible, in regard to any fact, which the statute did not require to be in writing. One of the questions was, whether the delivery of a written order for the sale of the land, required under the statute referred to, could be proved by parol. The judge delivering the opinion of the court said, "I find nothing in the law of 1822, which made it necessary that the fact of delivery should be recorded by the auditor of the county." "It might then be proved as any other matter in pais by parol, and the man who received the list was as competent to prove its delivery as any other person." And in another part of the opinion, on another point in the case, the same doctrine is distinctly laid down.

It is to be noticed in this connection, that the tax law of 1831 requires in express terms, that certain matters shall be placed on record by the county auditor. By the 26th section the county auditor and the county treasurer are required to make a settlement on the first Monday of January, when a delinquent list is to be made out, and sworn to by the treasurer; which list properly certified by the auditor, he is required to record in his office. And by the 31st section, the auditor is required to record the delinquent list, with a copy of the notice of sale, from the newspaper, in which it is published. And by the 34th section it is made the duty of the auditor to attend all sales of delinquent lands, and to make a record thereof. As the statute requires nothing to be of record, but the matters specified in the sections referred to, the implication is strong, that the legislature did not intend that any other part of the proceedings should be recorded. And hence, the reason and propriety of the distinction adverted to, between the mode of making proof of acts of record and those not of record.

Without deeming it necessary minutely to analyze the several exceptions urged to these proceedings, it only remains to say, they are fully met and answered by the well established legal doctrine of presumption in favor of the acts of sworn public officers. This doctrine is too well known and sanctioned, to require the citation of authorities to sustain it. It has also been applied by the supreme court of Ohio, in cases involving the validity of tax titles, as will appear from the cases, to which some reference will now be made.

In the case of Winder v. Sterling, 7 Ohio, 190, one of the questions before the court was, whether the record showed a compliance with one of the provisions of the tax law of Feb. 1, 1825, which required the delinquent list to be verified by the oath of the collector, administered by the county auditor. The collector had signed a certificate, in the form prescribed by the statute, which was set out in the record, but there was no evidence that he had been sworn to it. Yet the court held, that the absence of any proof that an oath had been administered, as required by the statute did not vitiate the proceeding. In thus deciding, the court must have presumed, that the statutory requirement had been complied with; there being no evidence justifying the contrary presumption. In the same case, a similar doctrine was recognized and applied. It appeared from the transcript from the auditor's office, that the delinquent list and notice of sale was published in a paper printed in an adjoining county, but did not show, as the reason for such publication, that no paper was printed in the county, in which the land was situated; or, that the paper containing the notice was in general circulation in such county. The court overruled this objection remarking, that "in this matter, the law is directory to the officer, and when he has exercised his discretion, we are disposed to believe in the absence of all proof to the contrary, that he has done his duty."

In the case of Sheldon v. Coates, 10 Ohio, 278, the tax deed was objected to, on the ground that it appeared from its recitals, that the certificate of sale, on which the deed was based, was signed by the officer executing it, by the official designation of collector, instead of sheriff. Though such signing was deemed to be erroneous, the court held the objection not sufficient to set aside the deed, stating in their opinion among other things, that "it is a general rule in sales by public officers, that where there is a sufficient power to warrant a sale, a slight variance or omission will not be held material." In the same case, a further exception to the proceedings was insisted on that the sheriff, who, under the statute then in force was ex-officio collector of taxes, and as collector, was required to give bond, had not done so, within the time directed by the statute. The law required this bond to be given before the first Monday of August, and that the duplicate should be withheld till bond was given. The bond was not given till the 10th of September, and the duplicate was not put into the hands of the collector till the 20th of that month. But this objection was overruled, as was also another, based on an irregularity in the notice of sale.

In the case of Gwynne v. Niswanger, 18 Ohio, 400, it was objected that the transcript from the county auditor's books did not show that the list of taxes in arrears, required by the statute to be made out and forwarded to

the auditor of state, on or before the 1st of August, was made out and forwarded by that day. In disposing of this objection, the late Judge Hitchcock, who delivered the opinion of the court said: "The time in which it was sent, does not appear, but I suppose, under this law, we may venture to presume that it was sent in time, and that the officer performed his duty." And, to another objection that it was not stated in the notice of sale, at what hour the sale was to commence, and that it did not appear from the return of the officer that the sale was at public auction, as directed by the statute, the court replied, that "the first is not necessary and the last will be presumed."

In the recent case of Ward v. Barrows, 2 Ohio St. 241, the doctrine of presumptions in support of the acts of public officers in tax proceedings, is fully considered, and conclusively settled. The objection to the tax title was the same as in the case of Winder v. Sterling before referred to, that it did not appear that the return of the list of delinquent taxes, required by law to be made by the collector, was sworn to by him before the county auditor as expressly directed by the statute. He was required by the law to sign the delinquent list, "and testify to the correctness of the same under oath or affirmation." As in the case of Winder v. Sterling, the collector had affixed his name to a certificate purporting to be an oath, in verification of the list, according to the form given by the statute, but it did not appear that an oath or affirmation had, in fact, been administered to him. In their opinion, the court refer with approbation to the decision in the case just named, and properly infer that the objection to the tax proceeding could only have been overruled by the application of the doctrine of presumption in support of the fact, that the delinquent list had been duly authenticated by the oath of the collector. They say, the conclusion of the court was correct that there was "presumptive proof that the oath had been administered." And in reference to the omission in the case before them, the court say, "under such circumstances, unless the statute makes written evidence indispensable, the officer will be presumed to have done his duty, until the contrary appears." And again—"Facts presumed are as effectually established, as facts proved where no presumption is allowed."

These authorities seem to be decisive of the question under consideration, and justify the conclusion that the exceptions urged to this tax title cannot be sustained. Adverting to those exceptions, not one of them implies a more material omission, or irregularity than that which was held unavailable in the cases of Winder v. Sterling, and Ward v. Barrows. In those cases there was no evidence of a fact which might well be deemed essential to the validity of the proceedings, but which the court held was presumptively established. This principle is certainly broad enough to cover the exceptions in this case. They do not embrace any act, required by the statute to be of record, or in writing, and under the decisions referred to, constitute no objection to the title asserted by the defendant. Judgment for the defendant.